GALVESTON OIL COMPANY v. JAMES A. THOMPSON.

No. 2811.

**1. Liability of Master for Injury to Employe—Charge.**—In a suit by a minor for personal injuries suffered while obeying the orders of the superintendent in work outside of plaintiff's régular employment, the court properly charged the jury "that the plaintiff would be entitled to recover if the superintendent ordered plaintiff to perform a service which was dangerous not within the purview of his employment, if in this the superintendent did not use due care, provided plaintiff was injured while attempting, in the exercise of due care, to obey the command."

**2. Same.**—The charge did not prevent the jury from finding the plaintiff wanting in due care so as to be guilty of contributory negligence, and thus defeat his right to recover, should the jury believe the undertaking was one so obviously dangerous that a prudent person would not have undertaken it.

**3. Negligence—Facts.**—On appeal the court will not declare a given state of facts fully explained and passed upon by the jury to be negligence *per se* on part of the injured party, and contrary to the finding of the jury.

**4. Conflict in Testimony.**—See facts and discussion of them where it was held that a conflict existed in the testimony so as to prevent the reversal of the judgment upon the ground that the verdict was against the testimony.

**5. Cumulative Evidence.**—Cumulative evidence exhibited by affidavit supporting a motion for new trial will not require a reversal of judgment.

**6. Minor Suing by Next Friend—Judgment.**—Upon the recovery by the minor suing by his next friend the judgment would be entered in favor of the minor. The next friend can not receive the money unless he becomes guardian, although he subjects himself to the payment of costs.

APPEAL from Galveston. Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*McLemore & Campbell,* for appellant. —1. When the servant is fully aware of the danger of his task and sees that it is wholly unsafe to undertake its discharge, he assumes the responsibility of legitimate consequences if he nevertheless proceeds, because the law imposes a duty on a servant to take care of himself under such circumstances, unless he be willing to take the chances on his own account. Railway v. Lempe, 59 Texas, 19; Wood on Mast. and Serv., secs. 326, 329.

2. The plaintiff, with but one arm and hand, was expected by the law to use reasonable care in the discharge of the hazardous duty which, understanding, he had nevertheless undertaken; and having negligently placed himself in the worst possible position of danger, he can not complain of his misfortune, because he was the cause of the damage to himself. Railway v. Lempe, 59 Texas, 19; Wood on Mast. and Serv., secs. 326, 329.

*Wheeler & Rhodes,* for appellee. —1. Jacques, the superintendent, having entire charge and control of the mill, stands in the place of the master, is the vice-principal, and his negligence that of the master. 64 Texas,

602; 2 Thomp. on Neg., 975, 971;. 112 U. S., 390, 395, 396; 52 Ill., 401; 17 Fed. Rep., 67; 4 N. W. Rep., 399, 405.

2.   " If the master order the servant into danger, or into a service other than that for which he was employed, his obedience will not, as a matter of law, be negligence in case he is injured in such an undertaking, and for such an injury it is held that the master is liable.   So also has the servant his action when he is exposed to some sudden or unusual danger by the master's neglect in performing his work."   This proposition is an exact quotation of section 132 of Beach on Contributory Negligence, and the rule is even stronger stated in other authorities cited.   Oil Mill v. Malin, 60 Texas, 645; 2 Thomp. on Neg., 976, 975; Lalor v. Railway, 52 Ill.; Beach on Con. Neg., sec., 132, note 1; 12 Fed. Rep., 600; 17 Fed. Rep., 68, 69; 14 Fed. Rep., 564; Field on Dam., 178; Deer. on Neg., sec. 196; 37 Mich., 210.

3.   The servant is not bound to search for dangers, or inspect machinery or appliance to see whether it is safe, even in those cases where his work is about machinery.   He has a right to rely upon the superior knowledge of the master—upon his care and prudence in protecting him from harm.   2 Thomp. on Neg., p. 975; 3 Am. State, 92, 239; Wood's Mast. and Serv., sec. 376.

4.   As to a safe place to work.   Beach, sec. 123; 3 Am. State, 238, 249; Bish. on Noncon. Law, sec. 648; Railway v. Leslie, 57 Texas, 87.

" It is not the least degree of fault on the part of the plaintiff that will prevent him from recovery, but it must be such a degree as to amount to a want of ordinary or reasonable care on his part under the circumstances at the time of the injury."   Railway v. Gorbett, 49 Texas, 573.

STAYTON, CHIEF JUSTICE.—Appellee's version of the facts of this case is, that he was employed to work as a sweeper on the lower floor of the oil mill, and that while thus engaged he was directed by the superintendent to go aloft and remove a scantling on the joists, or perhaps rafters, above.   That in obedience to the order he ascended and walked along a narrow plank to the place where he could reach the scantling still above him, when in an effort to remove it his clothing was caught on a revolving shaft, around which he was drawn until his clothing, by which he was held, gave way, when he was thrown to the floor below and in the accident greatly injured.   He states that the immediate cause of his clothing being caught on the shaft was protruding bolts with which the shafting was coupled, these being, as he and others state, unnecessarily and improperly so left, making it perilous for persons to work about or around the shaft.

He further shows that the place to which he was directed to go was one not visited by employes except the man whose business it was to oil the machinery.

The superintendent denied that he directed appellee to remove the scantling; that there was any reason why it should be removed, or that he had any knowledge whatever of any intent on part of appellee to attempt to remove it; and there was some evidence tending to show that he had gone to his home at the time appellee claimed to have been directed to remove the scantling, but this evidence was of uncertain character.

Before the accident occurred appellee had lost one hand, and at the time caught in the shafting was standing with the side from which the hand was gone next to the shafting, which caught the loose sleeve.

That the place to which appellee was directed to go was one of danger, and this greatly increased by the protruding bolts, the evidence tends strongly to show.

Appellant offered evidence tending to show that the bolts used in couping shafting did not protrude, as claimed by appellee, but that on the contrary the coupling was in all respects carefully made in the manner usual for such couplings.

The court, in effect, charged the jury that appellee would be entitled to recover if the superintendent ordered him to perform a service not "within the province of the plaintiff's employment" which was dangerous, if in this the superintendent did not use due care, provided appellee was injured while attempting, in the exercise of due care, to obey the command.

It is urged that the court erred in the charge given, in that "thereby the jury were prevented from considering as a matter of defense the reckless disregard of plaintiff for his own security in undertaking to obey the order of defendant's agent."

Such was not the effect of the charge; on the contrary, the jury were authorized under the charge if they believed the undertaking was one so obviously dangerous that a prudent person would not have attempted it, to find appellee guilty of contributory negligence, which they were informed would defeat his right to recover, notwithstanding the superintendent may have also been at fault.

The charge may not have been as full as it might with propriety have been made, but was correct so far as it went, and if appellee desired the proposition now insisted upon more clearly presented, a charge doing this should have been requested.

No request was made, doubtless because counsel for appellant at the time believed that the issues were fairly and with sufficient fullness presented.

It is now urged that the evidence showed such negligence on the part of appellee as to preclude a recovery, and this proposition is based on the theory that it was negligence *per se* for appellee to stand, while attempting to take down the scantling, with his partially empty sleeve next to the revolving shaft.

The jury were fully informed of the position of the scantling, the narrow standing to which appellee was confined, the position of the revolving shaft with reference to these, as well as the manner of its coupling, and it was for them to decide, under all the circumstances, whether appellee used such care as he ought to have used.

The third assignment is that "The jury were not authorized by the evidence to disbelieve the testimony of defendant and credit that of plaintiff on the question as to whether the agent of defendant gave the order to plaintiff to take down the scantling while the machinery was in motion, or at any other time, because there was a direct conflict of testimony between the two (and only witnesses as to the main question), and all the internal evidence arising out of facts testified to by others showed the impossibility that such an order could or would have been given; the facts testified to being that there was no use to have done that which plaintiff says was ordered, and certainly no possible reason for having such thing done whilst the machinery was in operation; and all the evidence went to show that the defendant's agent was absent at the time of the alleged order."

There was a direct conflict between the two witnesses, and that condition presents the very case in which this court is not authorized to set aside the finding of a jury whose province it is to pass upon the credibility of witnesses and the weight to be given to their testimony.

It is not denied that appellee was injured while attempting to take down the scantling, and when the jury came to consider what may be termed "internal evidence," they may have inquired why did this one-handed sweeper, whose duties were on the lower floor, undertake, if unbidden, to perform an undesired service, which defendant says was exceedingly dangerous? Why should he undertake unbidden to interfere with the management of the superintendent and to remove the scantling which was placed where the management desired it to stay?

It is not true that the evidence was all to the effect that the superintendent was not at the mill when the order to appellee is claimed to have been given, and that offered in addition to the testimony of the superintendent was of the most uncertain and unreliable character—evidence as to the superintendent's usual dinner hour and hour of return to mill, and like testimony.

A motion for new trial was made on the ground that witnesses for appellee had not made correct statements in regard to the bolts with which the shaft coupling was made, and in support of this affidavits were filed, which were met by counter-affidavits.

That issue was made on the trial, and the affidavits only showed ability to furnish cumulative evidence of the same character as that offered; besides the court had the affidavits made for both parties before it when the motion was overruled.

Appellee is a minor who sues by next friend, and complaint is made because the judgement is in favor of the minor and not in favor of the next friend.

The judgment is correctly entered.   Railway v. Hewitt, 67 Texas, 482. The next friend has no right to collect or receive the money unless he shall qualify as guardian of the estate of the minor, though he subjects himself to liability for costs.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered February 14, 1890.